IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BILLIE JOE CHAPMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:24-cv-01042-SHM-tmp |
| DONALD ALLEN, ET AL., | ) ) | |
| Defendants. | ) ) ) | |

**ORDER DIRECTING CLERK TO MODIFY DOCKET,
DISMISSING CONSOLIDATED COMPLAINT WITH PREJUDICE,
DENYING LEAVE TO AMEND, DENYING PENDING MOTIONS,
CERTIFYING THAT APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
NOTIFYING PLAINTIFF OF APPELLATE FILING FEE,
NOTIFYING PLAINTIFF OF COURT'S STRIKE RECOMMENDATION
UNDER 28 U.S.C. § 1915(G), AND CLOSING CASE**

On February 20, 2024, Plaintiff Billie Joe Chapman, Tennessee Department of Correction prisoner number 633331, an inmate incarcerated at the Hardeman County Correctional Facility (the "HCCF"), in Whiteville, Tennessee, filed a *pro se* civil complaint under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, and under § 504 of the Rehabilitation Act (the "RA"), 29 U.S.C. § 794.  (ECF No. 1.)  Chapman moved for leave to proceed *in forma pauperis*.  (ECF No. 2.)  The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee in accordance with the Prison Litigation Reform Act (the "PLRA"), 28 U.S.C. §§ 1915, *et seq*.  (ECF No. 4.)

On May 15, 2024, Chapman filed a motion seeking to amend his complaint to add defendants.  (ECF No. 11.)  The Court GRANTS Chapman's motion to amend (ECF No. 11) as a matter of course.  *See* Fed. R. Civ. P. 15(a).  For purposes of screening Chapman's ADA and

RA claims under the PLRA, the Court CONSOLIDATES the original complaint (ECF No. 1) and the motion to amend (ECF No. 11) as the "Consolidated Complaint."

Chapman sues the following Defendants:

(1) the Honorable Donald Allen of the 26th Judicial District of the Circuit Court of the State of Tennessee;
(2) Madison County Assistant District Attorney F/N/U Boyd ("ADA Boyd");
(3) Madison County Assistant Attorney General F/N/U Earls ("Assistant AG Earls");
(4) Joshua Phillips, Public Defender;
(5) Jack Collin Morris, Appointed Counsel;
(6) Jerry Wardlow, Warden;
(7) the State of Tennessee;
(8) Madison County Jail;
(9) Madison County Circuit Court;
(10) Jackson General Hospital;
(11) Hardeman County Sheriff's Department; and
(12) Western State Mental Institution

(ECF No. 1 at PageID 1 & ECF No. 11 at PageID 81-82). Chapman sues Defendants (1)-(6) in their individual and official capacities. (ECF No. 1 at PageID 1.) The Clerk is DIRECTED to modify the docket to add Defendants (7)-(12).

Chapman seeks an "immediate injunction" for his release from custody. (*Id*. at PageID 9.) Chapman requests $1,500 a day for every day that Chapman has been "illegally held" at the HCCF. (*Id*.)

Chapman filed a motion for the appointment of counsel on March 6, 2024, and six other motions between March 6, 2024, and July 17, 2024. (ECF Nos. 7, 8, 9, 12, 13, 14, 15.) Those motions (referred to collectively as the "Pending Motions") request relief as follows:

(1) Motion for the Court to Take Judicial Notice, asking the Court to take notice that Chapman is proceeding under the ADA and not 42 U.S.C. § 1983 (ECF No. 8);
(2) Motion for Temporary Restraining Order or Injunction, seeking access to the HCCF law library (ECF No. 9);

2

(3) Motion for Court to Intervene, asking the Court to intervene in the lawsuit based on Chapman's allegation that he was "taken advantage of" as a "mentally disabled person" during his criminal prosecution (ECF No. 12 at PageID 85-86);

(4) Motion for Miscellaneous Relief, reiterating that Chapman is proceeding under the ADA, not § 1983 (ECF No. 13 at PageID 91);

(5) Motion for the Court to Intervene, asking the Court to intervene in the lawsuit because "Defendants and their employers . . . lie [and] avoid the issues of a mentally disable[ed] American" (ECF No. 14 at PageID 97);

(6) Motion for the Clerk to Modify the Docket, asking the Court to direct the Clerk to modify the docket to change the cause from "42:1983 Prisoner Civil Rights" to ADA (ECF No. 15).

The Consolidated Complaint (ECF Nos. 1 & 11) and the Pending Motions (ECF Nos. 7-9 & 12-15) are before the Court.

For the reasons explained below: (1) the Consolidated Complaint is DISMISSED WITH PREJUDICE in its entirety; (2) leave to amend is DENIED; and (3) all Pending Motions are DENIED.

## I.  SCREENING THE COMPLAINT

### A.  LEGAL STANDARD

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Applying those standards, the Court accepts

3

the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)(2)). It also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3 (quoting Fed. R. Civ. P. 8(a)(2)).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

### B.  REQUIREMENTS TO STATE A CLAIM UNDER THE ADA & THE RA

Chapman sues under the ADA and § 504 of the RA. (ECF No. 1 at PageID 1.) To state a claim under either the ADA or § 504 of the RA, Chapman must show that he is "(1) disabled under the statute, (2) otherwise qualified for participation in the program, [services, or activities], and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination

4

under[,] the program, [services, or activities] by reason of his . . . disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (internal quotation marks and citation omitted).

## II.     FACTUAL ALLEGATIONS

Chapman alleges that he was arrested on October 20, 2020, for a theft offense. (ECF No. 1 at PageID 2.) Chapman alleges that the police "illegally talk[ed] to [Chapman] without an attorney" despite knowing that Chapman was "mentally disabled." (*Id*.) Chapman alleges that he was "abused" in the Madison County Jail, including being "tied to a chair," placed in a "strip cell," and sprayed with mace. (*Id*. at PageID 3.)

Chapman alleges that on February 25, 2021, he was "kidnapped" from the Madison County Jail and taken to Jackson General Hospital where he was "tied to a bed [and] forced [to take] mind-altering drugs." (*Id*.) Chapman alleges that in March 2021, he was assaulted by unidentified employees of the Madison County Jail while "tied to the [hospital] bed." (*Id*.)

Chapman alleges that during "the first week of March 2021," he was "kidnapped" from the Jackson General Hospital "without judge or court order" and taken to the Western State Mental Institution. (*Id*. at PageID 3-4.) Chapman alleges that he was "forced" to take "anti-psychotic medication" and was threatened with "physical force" and "takedowns" if he refused the medication. (*Id*. at PageID 4.) Chapman alleges that he was civilly committed "without judge or court order" in violation of his constitutional rights. (*Id*.)

Chapman alleges that in March 2021 Chapman "complained" to Judge Allen about Chapman's civil commitment. (*Id*. at PageID 5.) Chapman alleges that he had a hearing before Judge Allen and that Judge Allen "had knowledge of everything that took place." (*Id*.)

5

Chapman alleges that in May 2021, he was released from the Western State Mental Institution and returned to the Madison County Jail. (*Id*.) Chapman alleges that he was "kept under mental health care" at the Madison County Jail and confined naked in a "strip cell." (*Id*.) Chapman alleges that, while confined at the Madison County Jail, he was "still being forced [to take] mind-altering drugs." (*Id*. at PageID 6.)

Chapman alleges that on September 7, 2021, Judge Allen sent Chapman to prison without authority because "there was no plea of guilty or nolo contendere." (*Id*.) Chapman alleges that ADA Boyd engaged in malicious prosecution, but Chapman does not allege any facts to support this allegation. (*See id*.)

Chapman alleges that his appointed counsel Phillips failed to protect Chapman's rights and liberties. (*See id*.) Chapman alleges that Phillips and ADA Boyd conspired with Judge Allen to coerce Chapman's guilty plea on September 7, 2021, and that Chapman did not "kn[o]w what was going on" at the plea hearing. (*Id*. at PageID 7.) Chapman alleges that he was "tricked" and "led to believe that [if he pleaded guilty,] he would get out of jail and go to a special place for help." (*Id*.)

Chapman alleges that Judge Allen appointed Morris to serve as Chapman's post-conviction counsel. (*Id*.) Chapman alleges that, because Morris was Judge Allen's friend and former colleague, Morris refused to bring any "complaints" against Judge Allen. (*Id*. at PageID 8.) Chapman alleges that Morris refused to raise Chapman's desired claims in the state post-conviction application. (*Id*.) Chapman alleges that, instead, Morris raised claims that Chapman's trial counsel provided ineffective assistance of counsel and that Chapman "was not competent" to plead guilty. (*Id*.)

### III.     ANALYSIS

#### A.     Res Judicata

On July 24, 2023, Chapman filed a civil rights action under § 1983 against many of the same defendants that Chapman sues in his Consolidated Complaint.  (*See Chapman v. Allen,* No. 1:23-cv-1146-SHM-tmp (W.D. Tenn.), ECF No. 1.)   The factual allegations in Chapman's previous § 1983 lawsuit are almost identical to the allegations raised in his Consolidated Complaint.

For example, Chapman alleged in his § 1983 lawsuit that Judge Allen "sentenced [Chapman] to prison without authority on September 7, 2021" because "no plea [was] ever made on a plea agreement."   (ECF No. 1 at PageID 3.)   Chapman alleged that, while his criminal case was pending, he was taken from the Madison County Jail and sent to the Western State Mental Institution where he was forced to take antipsychotic drugs without his consent and without a "judge or court order."  (*Id*. at PageID 7.)

Chapman alleged that ADA Boyd and ADAG Earls "acted in concert to illegally restrain/kidnap [Chapman]."   (*Id*. at PageID 3.)   Chapman alleged that his attorneys Phillips and Morris did "not protect [the] rights of [Chapman] [and] caus[ed] [Chapman's] illegal conviction [by] refus[ing] to protect [Chapman] with ineffective assistance of counsel."   (*Id*. at PageID 3-4.)

Chapman alleged that, "before and after September 7, 2021" and "through November 1, 2021," employees at the Madison County Jail: (1) assaulted Chapman; (2) left Chapman naked in his cell; (3) refused to provide pen, paper, and mail service to Chapman; (4) prohibited Chapman from calling his public defender; (5) denied bedding to Chapman; (6) sprayed Chapman with mace

and pepper spray when he refused to take his medication; and (7) subjected Chapman to "mistreat[ment] and cruel and unusual punishment." (*Id*. at PageID 8-9.)

On February 15, 2024, the Court dismissed Chapman's § 1983 lawsuit with prejudice for failure to state a claim to relief. (*See Chapman v. Allen,* No. 1:23-cv-1146-SHM-tmp (W.D. Tenn.), ECF No. 15.) The Court construed Chapman's complaint to allege 10 claims under § 1983 and determined that 9 of those claims were barred by the statute of limitations. (*Id*. at PageID 150, 155-57.) The Court determined that Chapman's remaining claim of false imprisonment against Judge Allen was subject to *sua sponte* dismissal because, among other reasons, the claim was barred by the doctrine of judicial immunity and by *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id*. at PageID 157-60.)

Although Chapman did not raise claims under the ADA and the RA in his previous lawsuit, the doctrine of claim preclusion, or *res judicata*, bars Chapman from litigating a new legal theory based on the same operative facts. "[P]laintiffs cannot avoid the effects of claim preclusion by merely repacking their grievances into alternative theories of recovery or by seeking different remedies." *Heike v. Cent. Mich. Univ. Bd. of Trs*., 573 F. App'x 476, 482 (6th Cir. 2014) (citing *Rawe v. Liberty Mut. Fire Ins. Co*., 462 F.3d 521, 529 (6th Cir. 2006)).

In *Heike*, the Sixth Circuit held that the dismissal of a plaintiff's prior § 1983 lawsuit precluded her from bringing a new lawsuit challenging the same conduct as violative of Title VI of the Civil Rights Act of 1964 and Title IX of the Educational Amendments of 1972. *Id*. at 477. The Sixth Circuit explained that, "to constitute a bar under the doctrine of claim preclusion, there must . . . be an 'identity of the causes of action.'" *Id*. at 482-83 (citing *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). "Causes of action share an identity where the facts

and events creating the right of action and the evidence necessary to sustain each claim are the same." *Id*. at 483. The Sixth Circuit concluded that the plaintiff's "initial § 1983 claims share[d] an identity to those asserted in her second lawsuit because all of her claims stem[med] from the same set of operative facts." *Id*. As the Sixth Circuit explained, had the plaintiff "brought her Title VI and IX claims alongside her § 1983 claims, she necessarily would have relied on the same evidence in support of those claims," and it was "of no moment that the statutory elements of Titles VI and Title IX claims differ from those of an equal protection or due process claim raised under § 1983." *Id*.

*Res judicata* bars Chapman's claims under the ADA and the RA because his claims, which rely on the "same set of operative facts" should have been raised in Chapman's previous § 1983 lawsuit.[1] *See id*. Chapman's claims under the ADA and the RA are DISMISSED WITH PREJUDICE.

    **B.**    **ADA & RA Claims**

Even if Chapman's claims under the ADA and the RA were not barred by the doctrine of *res judicata*, the Consolidated Complaint would be subject to dismissal because Chapman's conclusory allegations do not "plausibly suggest an entitlement to relief." *Williams*, 631 F.3d at 383.

---

[1] Although the Consolidated Complaint includes additional defendants, *res judicata* bars Chapman's claims against them because Chapman had a full and fair opportunity to raise his claims against those defendants in his prior lawsuit. *See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc*., 701 F.3d 1093, 1098 (6th Cir. 2012) (explaining that, "[w]here a litigant brings repeated actions based upon the same operative facts," *res judicata* may still apply "despite a change in legal theory or the 'cast of characters-defendants'") (quoting *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Under § 504 of the RA any "otherwise qualified individual with a disability" is protected from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of . . . his disability."  29 U.S.C. § 794(a).  Because claims brought under Title II of the ADA and § 504 of the RA require proof of substantially similar elements, courts analyze ADA and RA claims together.  *See, e.g., S.S.*, 532 F.3d at 452-53 (analyzing ADA and RA claims together).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998).  The RA also applies to state prisons and inmates.  *See Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (stating that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners").

Chapman makes the conclusory allegation that he is "mentally disabled." (ECF No. 1 at PageID 2.)  Chapman alleges that he received anti-psychotic medication while treated at the Western State Mental Institution, but he fails to provide specific details about the nature of his disability.  (*See id*. at PageID 4.)

"Mental illnesses of various sorts can certainly qualify as a disability under the ADA [and the RA], but where . . . a party alleges that he is disabled under the ADA [and the RA], courts have generally required the party to plead the disability with some factual specificity." *Adams v. Vanderbilt Univ.*, No. 3:23-cv-00001, 2024 WL 1182861, at *17-18 (M.D. Tenn. Mar. 19, 2024) (internal quotation marks and citation omitted).  Chapman does not describe his mental illness

10

with any specificity and has failed to allege sufficient facts to show that he has a qualifying disability under the ADA or the RA. *See id*.

Even if Chapman had alleged sufficient facts to show that he has a disability under the ADA and the RA, Chapman's allegations would not show that he was excluded from a service or program, denied accommodation, or discriminated against due to his disability. *See* § 12132 (ADA); *see also* § 794(a) (RA). All of Chapman's allegations are based on or related to his state court criminal proceedings. His allegations are insufficient to state any covered discrimination based on his unspecified mental illness.

Chapman's conclusory allegation of violations of the ADA and the RA without specific supporting factual allegations fail to state a claim to relief. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555. Chapman's claims under the ADA and the RA are DISMISSED WITH PREJUDICE.

IV.    **AMENDMENT UNDER THE PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)). Leave to amend should not be granted where a plaintiff cannot cure the deficiency in his complaint. *See Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *see also Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

11

The Court DENIES leave to amend the Consolidated Complaint. Amendment would be futile because Chapman's claims under the ADA and the RA are barred by the doctrine of *res judicata* and fail to state to claim to relief.

### V.     APPELLATE ISSUES

Pursuant to Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), it is CERTIFIED that any appeal in this matter by Chapman would not be taken in good faith. If Chapman nevertheless chooses to file a notice of appeal, he must either: (1) pay the entire appellate filing fee or, if he is confined at that time, (2) submit a new *in forma pauperis* affidavit and a current, certified copy of his inmate trust account statement for the last six months, in compliance with 28 U.S.C. § 1915(a)-(b).

### VI.    NOTICE OF STRIKE RECOMMENDATION

The "three strikes" provision of 28 U.S.C. § 1915(g) prevents a court from granting *in forma pauperis* status to a prisoner who "has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). The Court recommends that the dismissal of this case be treated as a strike pursuant to § 1915(g). *See Simons v. Washington*, 996 F.3d 350 (6th Cir. 2021).

### VII.   CONCLUSION

For the reasons explained above:

A.    Chapman's ADA claim and his claim under § 504 of the RA are DISMISSED WITH PREJUDICE as frivolous because they are barred by *res judicata* and, in the

12

   alternative, for failure to state a claim to relief. *See* §§ 1915(e)(2)(B)(i)-(ii) & 1915A(b)(1).

B.  Leave to amend the Consolidated Complaint is DENIED.

C.  The Court recommends that this dismissal be treated as a strike pursuant to § 1915(g). *See Simons*, 996 F.3d 350.

D.  The Court CERTIFIES that an appeal would not be taken in good faith and DENIES leave to proceed *in forma pauperis* on appeal.

E.  All Pending Motions (ECF Nos. 7, 8, 9, 12, 13, 14, 15) are DENIED.

F.  This case is DISMISSED in its entirety.

IT IS SO ORDERED this *31st* day of January, 2025.

            */s/ Samuel H. Mays, Jr.*
            SAMUEL H. MAYS, JR.
            UNITED STATES DISTRICT JUDGE